Appeal of **UNION DRY GOODS CO.**          Docket No. 455.

> Salaries paid by the taxpayer to its officers in the fiscal year ended July 31, 1918, *held* to have been paid for personal services actually rendered in that year, and to have been reasonable in amount.

Submitted February 4, 1925; decided March 18, 1925.

*Fred Van Dolsen, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.*, for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the fiscal year ended July 31, 1918. The entire amount of the deficiency is not in controversy, but only so much thereof as arises from the disallowance by the Commissioner of part of the additional salaries paid by taxpayer to its officers in that year, and deducted from gross income as ordinary and necessary business expense. A hearing was held, and the case submitted on the pleadings, testimony, and exhibits, from which the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a corporation organized in the year 1899, under the laws of the State of Georgia, and is and has been since its incorporation, engaged in operating a retail dry goods business at Macon, Ga. The capital stock of the corporation was originally $15,300, divided into 153 shares of the par value of $100 each. The capital stock was increased to $15,500 in the year 1907, and to $16,300 in the year 1914.

2. Since the year 1905 it has been the custom of taxpayer to pay additional salaries to its officers and employees when authorized to do so by the advisory board of the corporation, and additional salaries were voted and paid to taxpayer's officers during the years 1905, 1913, 1915, and 1918.

During the period July 31, 1912, to July 31, 1918, the following-named persons were officers and employees of the corporation, and they devoted all their time to the promotion and advancement of the corporation's business: W. J. Juhan, president; D. M. Brown, vice president; J. T. Killen, member board of directors; D. S. Wagnon, secretary and treasurer.

During each of the fiscal years ended July 31, 1915, July 31, 1916, July 31, 1917, and July 31, 1918, the regular salaries of the officers of the corporation were—

| | |
|---|---:|
| W. J. Juhan | $10,000 |
| D. M. Brown | 7,500 |
| J. T. Killen | 5,500 |
| D. S. Wagnon | 5,500 |

On July 12, 1918, the advisory board of the Union Dry Goods Co. met and voted to pay additional salaries to the officers of the corporation herein named. The minutes of the meeting of the advisory board, as prepared by the secretary and pertinent here, are as follows:

Mr. Juhan asked in reference to the overdrafts of the stockholders. It was found that a majority of this consists of merchandise bought by members' families for the past several years. It was the general opinion that sufficient back salary be credited to cover same, and that the salaries of Mr. Juhan, Brown, Killen, and Wagnon should be increased twenty-five (25%) per cent. It was unanimously agreed that this be done beginning August 1, 1918, and the back salary should be credited for the years ending July 31, 1915, 1916, 1917, and 1918, to the accounts of same, on a percentage of present salaries, necessary to cover the largest overdraft, which is that of Mr. Brown. The same percentage of back salary to apply to Mr. Juhan, Killen, and Wagnon for the same period.

Pursuant to the action of the advisory board taken on July 12, 1918, additional salary was credited to the accounts of the officers, in the following amounts:

| | |
|---|---:|
| W. J. Juhan | $14,800 |
| D. M. Brown | 11,000 |
| J. T. Killen | 8,140 |
| D. S. Wagnon | 8,140 |

The amount of the additional salaries was arrived at by crediting D. M. Brown with an amount equal to his overdraft and crediting each of the other officers with an amount which was in the same proportion to his regular salary as the amount credited to Brown was to his regular salary.

The number of shares of the stock of the corporation owned by the several officers during the fiscal year ended July 31, 1918, is as follows:

| | Shares |
|---|---:|
| W. J. Juhan | 47 |
| D. M. Brown | 38 |
| J. T. Killen | 22 |
| D. S. Wagnon | 10 |

The total sales and the surplus of the corporation for the fiscal years included in the period July 31, 1912, to July 31, 1918, were:

| Fiscal year ended— | Sales | Surplus | Fiscal year ended— | Sales | Surplus |
|---|---:|---:|---|---:|---:|
| July 31— | | | July 31— | | |
| 1913 | $485,992.18 | $224,789.12 | 1916 | $627,189.82 | $231,759.66 |
| 1914 | 622,537.65 | 269,752.47 | 1917 | 728,807.87 | 269,683.05 |
| 1915 | 550,968.72 | 222,847.29 | 1918 | 1,019,491.83 | 324,653.45 |

The additional salaries paid to the officers of the Union Dry Goods Co. pursuant to the action of the advisory board taken on July 12, 1918, were and were intended to be additional compensation for services actually rendered by the officers during the fiscal year ended July 31, 1918.

The regular, additional, and total salaries paid to taxpayer's officers for the fiscal year ended July 31, 1918, were not in proportion to the number of shares of stock held by them, and such salaries represent reasonable compensation for services actually rendered by them in that year.

The additional salaries voted and paid by taxpayer to the officers named, for the fiscal year ended July 31, 1918, were deducted from gross income on its return for that year as an ordinary and necessary business expense. The Commissioner disallowed $31,560 of the additional salaries paid for that year and determined that there is a deficiency in tax in the amount of $20,731.63. Taxpayer was notified of the Commissioner's determination by registered letter mailed on August 26, 1924. The petition herein was filed October 24, 1924.

### DECISION.

The determination of the Commissioner is approved in part and disapproved in part. The amount of the deficiency to be assessed for the fiscal year ended July 31, 1918, will be computed in accordance with the following opinion and will be settled on consent or on ten days' notice in accordance with Rule 50.

### OPINION.

MARQUETTE: Two questions of fact are presented for determination by the record in this case; namely:

1. Were the additional salaries paid by the Union Dry Goods Co. to its officers, pursuant to the action of its advisory board, taken on July 12, 1918, additional compensation for personal services actually rendered by them during the fiscal year ended July 31, 1918, and

2. Were the amounts of such additional salaries reasonable?

The evidence in this case discloses that taxpayer was organized and commenced business in the year 1899 with a capital of $15,200. It was successful, and as the volume of business and the profits therefrom increased it from time to time, as conditions warranted, paid to its officers and employees bonuses or additional salaries. That was done in the year 1905 and again in the years 1913 and 1915. While business was flourishing during the years 1916 and 1917, no bonuses or additional salaries were voted or paid in those years, because the corporation was erecting a new building and needed all of its available assets for that purpose. During the fiscal year ended July 31, 1918, the volume of taxpayer's business showed an increase of approximately 40 per cent over the business of the preceding year. During the period from July 31, 1915, to July 12, 1918, cost of living had increased very materially, as is well known, but taxpayer's officers were still receiving the same regular salaries they had received in the year 1915. As a result of the increased cost of living the several officers had become indebted to taxpayer on account of merchandise

purchased for the needs of themselves and their families. On July 12, 1918, the advisory board of the corporation, recognizing the necessity, in view of the increased cost of living, of paying adequate compensation to its officers and employees and also the ability of taxpayer so to do because of its prosperous condition, took steps to increase the salaries of its employees, and also the salaries of its officers who devoted all their time to the advancement of the corporation's interest and who were responsible for such success as it had enjoyed. The vice president of the corporation was indebted to it in the amount of about $11,000, and the advisory board, therefore, provided that his account should be credited with the amount of the overdraft and that there should be placed to the credit of the other officers, subject to their orders, amounts which bore the same ratio to their regular salaries as the amount credited to the vice president bore to his regular salary. At the same time an increase in salary for the officers of the corporation was also provided for the ensuing year. The minutes of the meeting of the advisory board recite that " the back salary should be credited for the years ending July 31, 1915, 1916, 1917, and 1918." The secretary of the advisory board, who is now and was then also one of the officers of the corporation, testified that at the meeting of July 12, 1918, he made a memorandum of what was actually done and some months later elaborated on it in preparing the regular minutes, and wrote them in such a way as to make it appear that the additional salaries were also intended to cover the years 1915, 1916, and 1917, but that as a matter of fact the advisory board only voted to pay additional salaries for the fiscal year ended July 31, 1918, for services actually rendered in that year. He also testified that the words " back salary " merely represented his own way of describing the additional compensation voted and that the words " additional salaries " were actually employed by the advisory board.

While the testimony of taxpayer's secretary is in conflict with the recitals in the minutes of the meeting of the advisory board, which were prepared by him, we think the error in the minutes has been clearly proved, and that the additional salaries voted on July 12, 1918, were for services actually rendered in the fiscal year ended July 31, 1918, and should be allowed. The corporation had been extremely prosperous in that year and was able after paying the additional salaries under consideration, to pay additional salaries and bonuses to its other employees and to increase its surplus by more than $54,000. Moreover, the necessity of larger salaries was recognized, in view of the greatly increased cost of living. That the additional salaries were intended to cover prior years is refuted by the fact that although the fiscal year ended July 31, 1915, is mentioned in the minutes of the meeting of the advisory board, additional salaries had already been paid for that year. The evidence further establishes that taxpayer kept its books on the cash receipts and disbursements basis and that its books for all years prior to the year beginning July 31, 1917, had been closed at the time the additional compensation under consideration herein was voted and paid. We conclude from the evidence that the additional salaries paid to taxpayer's officers, pursuant to the action of the advisory board, taken on July 12, 1918, were, and were intended to be, additional

compensation for personal services actually rendered by them in the fiscal year ended July 31, 1918.

An extended discussion of the second question presented is not necessary. The evidence shows that during the fiscal year ended July 31, 1918, taxpayer's sales had increased by more than $290,000, and that, after paying the additional salaries in question, as well as bonuses to all its other employees, it carried to its surplus fund more than $54,000, or more than three times the amount of its outstanding capital stock. The officers to whom the additional salaries were paid were also employees of the corporation and devoted all their time and energy to its advancement, and its success was due almost entirely to their efforts. We think that, measured by the results accomplished, both from the standpoint of volume of business transacted and profits to the corporation arising therefrom, the salaries paid to its officers were not unreasonable or excessive for the services rendered. It therefore follows that taxpayer, in computing its net income for the fiscal year ended July 31, 1918, should be permitted to deduct as an ordinary and necessary expense, the additional salaries voted and paid to its officers in that year.